UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:     CASE NO.

**ROBERT L. GRANT**     **07-10465**
    SECTION A
DEBTOR     CHAPTER 7

## REASONS FOR DECISION

On March 10, 2009, the Court heard the Objection to Claimed Exemptions filed by Michael Chiasson, Chapter 7 trustee ("Trustee")[1] and New Falls Corporation ("New Falls")[2] as well as, the Response by the debtor, Robert L. Grant ("Debtor")[3]. At the conclusion of the hearing, the Court gave the parties an opportunity to file legal briefs[4] and took the matter under advisement.[5]

**I. Jurisdiction and Venue**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409.

**II. Facts**

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 15, 2007. In Debtor's original Schedule C, Debtor claimed a homestead exemption under California law on property located at 720 Robert Street, New Orleans, Louisiana ("Robert St.").[6] New Falls

---

[1] Pleading 125.

[2] Pleading 119.

[3] Pleadings 127 and 128.

[4] See pleadings 134, 135.

[5] Pleading 132.

[6] Pleading 1.

and Trustee objected to the California exemption.[7] On May 15, 2007, Debtor filed a Motion to Convert this case from chapter 7 to 13. Objections to the conversion request were filed by New Falls and Trustee. In connection with the Opinion on the Motion to Convert, this Court found that Debtor's claim to the California homestead exemption was without merit.[8]

On January 8, 2009, Debtor filed an Amended Schedule C claiming a $25,000.00 homestead exemption on Robert St. under Louisiana law.[9]

On January 15, 2009, Trustee filed a Motion for Sale of Robert St. Free and Clear of Liens and to Substitute Trustee for Debtor on Agreement to Purchase and Sell ("Sale Motion").[10] The Sale Motion alleged that Debtor, without authority of the Court or knowledge of Trustee, marketed Robert St. for sale and entered into a purchase agreement for $282,000.00. The Court granted[11] the Sale Motion over Debtor's Objection.[12]

New Falls and Trustee filed Objections to Debtor's claimed Louisiana homestead exemption on Robert St.[13]

---

[7] Pleadings 41 and 51.

[8] In its Reason for Decision on the Motion to Convert, the Court found that Debtor was a resident of Louisiana from 2004 to present and occupied Robert St. as his home from 2005 to present. Pleading 95, p. 26. Debtor did not appeal, and the Court's Order dated February 27, 2008, is now final. Pleading 94. As a result, these Findings of Fact are now the law of the case.

[9] Pleading 105.

[10] Pleading 107.

[11] Pleading 123.

[12] Pleadings 113 and 114.

[13] Pleadings 119 and 125.

### III. Law and Analysis

Louisiana has opted out of the federal exemptions available to debtors under 11 U.S.C. § 522 and has provided its own exemption laws. Louisiana law provides for exemption from seizure and sale of $25,000.00 of value of a debtor's homestead or residence.[14] Debtor claims this $25,000.00 exemption on the proceeds of the sale of Robert St.

#### A. Leave to Amend

Debtor filed his Amended Schedule C without seeking leave to amend. Trustee and New Falls objected to the amendment on a timely basis. Trustee and New Falls request that the Court deny Debtor leave to amend his exemptions because of Debtor's bad faith. Additionally, they allege that Debtor's proposed amendment will prejudice creditors.

Schedules may be amended by debtors "as a matter of course at any time before the case is closed."[15] Although Bankruptcy Rule 1009 appears to grant debtors an unfettered right to file an amendments to schedules, case law interpreting the Rule holds otherwise. The jurisprudence acknowledges a debtor may freely amend schedules in the ordinary course. However, it also provides that amendments may be denied if the debtor is in bad faith or the amendment is prejudicial to creditors.[16]

---

[14] La. R.S. § 20:1.

[15] F.R.B.P. 1009(a).

[16] *Matter of Sandoval*, 103 F.3d 20, rehearing denied (5th Cir. 1997); *In re Williamson*, 804 F.2d 1355 (5th Cir. 1986); *In re Michael*, 163 F.3d 526 (9th Cir. 1998); *Matter of Yonikus*, 996 F.2d 866 (7th Cir. 1993); *In re Calder*, 973 F.2d 862 (10th Cir. 1992); *Doan v. Hudgins*, 672 F.2d 831 (11th Cir. 1982); *Ward v Turner*, 176 B.R. 424 (E.D. La. 1994), aff'd 66 F.3d 322 (5th Cir. 1995)*; McFatter v. Cage*, 204 B.R. 503 (S.D. Tex. 1996)*.

As the Fifth Circuit recently confirmed in *In re Unruh*, 265 Fed. Appx. 148 (5th Cir. 2008):

> Amendments to exemptions are generally liberally allowed under Federal Rule of Bankruptcy Procedure 1009. However, leave to amend may be denied "if there is a showing of the debtor's bad faith or prejudice to the creditors." *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir. 1986). A finding of bad faith requires some form of deception, such as an effort to mislead creditors or to conceal assets, as opposed to a mere mistaken failure to list an asset or to claim an exemption. *See McFatter v. Cage*, 204 B.R. 503, 508 (S.D. Tex. 1996).[17]

And so, this case will be determined by satisfying the question, what constitutes prejudice or bad faith?

### 1. Prejudice

Prejudice to creditor interests is generally found if the amendment specifically affects their rights after the fact, so as to "harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position."[18] For example, prejudice has been found when the trustee, after relying on the debtor's position, instituted litigation with creditors over whether property was property of the estate.[19] When distributions have already been made to creditors in a case, and the debtor seeks to add a previously unscheduled claim, the request is routinely denied when the new creditor would not receive distributions in a like amount with those similarly situated due to late participation in the case.[20]

In this case, Debtor listed Robert St. in his original Schedules and claimed on Schedule C a homestead exemption under California law. After this Court made it clear in its Reasons for

---

[17] *In re Unruh*, 265 Fed.Appx. 148, 150 (5th Cir. 2008).

[18] *In re Williamson*, 804 F.2d at 1358.

[19] *In re Calder*, 973 F.2d at 868.

[20] *In re Shaffer*, 92 B.R. 632, 634 (Bankr.E.D.Pa. 1988).

4

Decision on the Motion to Convert that Debtor did not qualify for exemptions under California law, Debtor amended his Schedules to claim a homestead exemption under Louisiana law.[21]

Robert St. was not concealed, nor was Debtor's intent to claim a homestead exemption on the property. While allowing Debtor to claim a Louisiana homestead exemption on Robert St. would undoubtedly prejudice creditors by reducing available non-exempt assets in the estate, because this prejudice is general, occurs any time an exemption is claimed, and does not prejudice any one creditor more than any other, the requested amendment is not so prejudicial as to warrant a denial of the Debtor's right to amend.[22] However, the inquiry does not end here.

**2. Bad Faith**

New Falls and Trustee argue that Debtor's conduct during this entire proceeding is so egregious that to allow him leave to amend would be a judicial travesty. New Falls and Trustee urge the Court to adopt the ruling of *Ward v. Turner*[23] and either deny Debtor the right to amend his exemption schedule or allow the Trustee to offset exempt property with the obligations owed to the estate by Debtor.

In *Ward*, the debtor's discharge was denied because she failed to keep financial records, concealed assets and claimed exemptions under Louisiana law to which she was not entitled. After the court denied her exemptions, she attempted to amend her schedules to claim an exemption for household furnishings under Texas law. Her attempt to amend was denied by the Bankruptcy Court and affirmed by the District Court and Fifth Circuit.

---

[21] Pleading 95.

[22] *In re Williamson*, 804 F.2d at 1358.

[23] *Ward v. Turner*, 176 B.R. 424 (E.D.La. 1994).

5

In its opinion, the District Court acknowledged that the debtor's misconduct did not directly affect the assets in question.[24] Nevertheless, because the debtor's bad faith had been a "recurring theme" in the proceedings before the Bankruptcy Court, the District Court found that her bad faith was sufficient basis to deny leave to amend under Bankruptcy Rule 1009. The appeal of this ruling was dismissed by the Fifth Circuit as frivolous.[25]

In *Mcfatter*, the Court concluded:

Implicitly, under Fifth Circuit analysis, bad faith generally requires concealment of an asset or an exemption of which the creditors have no knowledge and thus no opportunity to investigate. It requires something more than a mistaken failure to list an asset or to claim an exemption. In sum, to have "bad faith," there must be some form of deception.[26]

Previously, this Court itemized in its Reasons for Decision on Debtor's Motion to Convert and the subsequent Order Denying Discharge,[27] that Debtor has consistently and persistently acted in bad faith both prior to this filing and throughout the administration of this case.[28] The specific grounds of misconduct are too numerous to list here, but because of them, Debtor's request to convert as well as his discharge were denied, and he was referred to the United States Attorney and Federal Bureau of Investigation for prosecution.

Although the Court will not list all the details of Debtor's misdeeds, two findings are

---

[24] Except to the extent that the property was originally claimed as exempt under another inapplicable state's law. A fact also present here.

[25] *See, Ward v Turner*, 66 F.3d 322 (5th Cir. 1995).

[26] *McFatter*, 204 B.R. at 508.

[27] Debtor's discharge was denied in an adversary proceeding instituted by New Falls. Case no. 07-1119, pleading 44. On appeal by Debtor, the United States District Court affirmed this Court's denial of discharge. *Id*. at pleading 62.

[28] Pleading 95, p. 8.

particularly relevant to the consideration of this request for relief. Those two findings involve Debtor's request for a California homestead exemption and the concealment of estate cash.

At the time Debtor filed his petition, he held funds in undisclosed accounts with Whitney National Bank and Vanguard, undisclosed receivables with Smith and Hawkins, an undeposited certified check[29] and understated the balance in a *disclosed* account at Capital One Bank. The total value of the undisclosed assets was $42,192.10. Under oath at his section 341(a) meeting of creditors, Debtor denied that he had failed to list any assets on his schedules. When questioned specifically about the Vanguard and Whitney accounts, Debtor testified that any funds on deposit had been "spent," which was a lie. Immediately after his meeting of creditors, Debtor attempted to withdraw the money he was concealing but could not. Instead, he spent the funds to remove them from the Trustee's reach. By the time the Trustee seized the accounts, Debtor had dissipated over $35,000.00 in estate cash postpetition.

Debtor's use of estate cash was not by accident or through ignorance. He was represented by counsel throughout his case and warned by Trustee *prior to spending any of the money*, that all cash should be immediately turned over to Trustee. Debtor now seeks $25,000 in cash proceeds from the sale of Robert St. through this requested amendment. The amount claimed is less than the funds Debtor wrongfully appropriated postpetition.

When Debtor filed his petition, he was living on Robert St. Debtor had resided in Louisiana for the three years preceding filing, had served as a poll watcher in state elections, and had represented on his mortgage application in 2004 that Robert St. was to be his primary residence. At the time of his filing, Debtor's only real property interest was in Robert St. At trial, Debtor

---

[29] Eventually, this check was deposited postpetition into the Whitney account.

admitted that since 2004, he had not owned a home in California nor did he rent a residence in that state. Further, Debtor could not detail any significant period of time that he had spent in California during the three years preceding his bankruptcy. In short, Debtor had no credible basis for claiming California's homestead exemption.

As found in the Court's previous Reasons for Decision, Debtor's motivation for claiming a California exemption was to avail himself of a more generous exemption than allowed under Louisiana law. Both Debtor's conduct with regard to available, undisclosed estate cash and his attempt to shelter a larger share of his home from creditors were accomplished through the filing of false schedules, statements of financial affairs and false statements under oath. But for the efforts of New Falls and Trustee, Debtor would have successfully defrauded his creditors and this Court. As it is, Debtor availed himself of over $35,000 in assets before he could be stopped.

Trustee also asserts that Debtor's bad faith has continued even since this Court's rulings on the denial of discharge and conversion. While Trustee has been pursuing third parties in an effort to recover the funds Debtor wrongfully appropriated, Debtor, without authority, surreptitiously signed a listing agreement for Robert St. and ultimately a purchase agreement. Debtor failed to disclose to either the realtor listing the property or the buyer that he was in bankruptcy. Only during the purchaser's title check was a notice of bankruptcy filing found. This resulted in the purchaser contacting Trustee.

This is not the first time Debtor has sold a home while in bankruptcy. In 2001 Debtor filed

bankruptcy.[30] During the administration of that case, Debtor also listed and signed a purchase agreement on his home. After securing a sale, Debtor moved to dismiss his case without notifying the court or the trustee that he had a sale pending, the proceeds from which could pay off all claimants. The case was dismissed, and Debtor pocketed the funds. This Court can only conclude that Debtor's attempt to sell Robert St. was an effort to repeat past results.

Although Debtor maintains that he should be entitled to a homestead exemption under Louisiana law regardless of his conduct, the issue before the Court is not whether he would qualify for an exemption, but whether he should be allowed to amend his schedules in light of his conduct. The Court concludes that he should not.

Debtor's conduct, postpetition has directly affected the amounts creditors are likely to receive in distribution. His conduct has raised both the costs of administering this estate as well as disapated liquid assets that could have satisfied a large percentage of creditors. By using available, nonexempt cash for his personal gain, Debtor effectively obtained the use of nonexempt property. It remains to be seen if any of those funds can be recovered. If they are, the Court predicts that it will be at the expense of third parties not Debtor.

Debtor now appears before the Court claiming a right to claim an exemption, both because Bankruptcy Rule 1009 provides for liberal amendment and because exemptions are to provide a debtor with some small amount of property so that he will not be a burden on society. While amendments are liberally granted, there are limits. Debtor has continued to flaunt the authority of the Court despite representation by counsel and stern rulings to the contrary. Given the burden this

---

[30] Case no. 01-45914, United States Bankruptcy Court for the Northern District of California.

Debtor has imposed on the entire system and his creditors in particular, the Court does not consider his request warranted. Because the Court has concluded that Debtor's bad faith justifies a denial of his right to amend, the Court will not address the feasibility of offsetting the exemption against the amounts due to the estate by Debtor.

    A separate judgment will be entered in accordance with these Reasons.

    New Orleans, Louisiana, May 1, 2009.

                                          Hon. Elizabeth W. Magner
                                          U.S. Bankruptcy Judge